Good morning, Your Honors, and may it please the Court, Cynthia Stein for Petitioner Terrence Prince, and we are pro bono counsel. Well, thank you for doing pro bono work. The Court sincerely appreciates that counsel for the bar are willing to do so, so that we can have good representation on all sides of the case. Thank you. It's our pleasure to be here. I would like to reserve two minutes of my time, please, for rebuttal. So, Judge Rustani and Judge Callahan, you both asked what preclude or subject Brady claims to this standard. This Court and the Supreme Court have repeatedly said that the threshold question, whether a claim is second or successive, is not a question that is answered by the statute. The penalty is very clear that to determine whether a claim is second or successive, you look to three factors. You look to consistency with the abuse of the writ standard, because AEDPA is intended to be an evolution, not a radical departure from that standard. You look to AEDPA's purposes, the kinds of claims that it is meant to subject to severe restrictions. And you look to the practical implications of habeas practice if a given claim were to be treated as second or successive. And so you apply these factors in Brady claims. It's very clear that it is not meant to foreclose Brady claims based on newly discovered evidence. It's not true that, it may be true that Judge Callahan used the Venn standard, that Brady claims may seem, are all based on newly discovered evidence, or we would say a newly disclosed violation. That does not mean that they are all intended, that all Brady claims are second or successive. There are many claims based on newly discovered evidence that are nevertheless not second or successive, because, for example, the first petition was dismissed for failure to exhaust state remedies. So the fact that a claim is based on newly discovered evidence does not answer the threshold to question whether the claim is intended to be treated as second or successive. And, you know. Kagan. Well, you want us to just pull Brady claims out of 2244B, right? Not all Brady claims, but Brady claims, again, in answering the question whether a claim is second or successive, you have to look to AEDPA's purposes and the abuse of the writ doctrine. AEDPA's purpose, the abuse, it's very clear, and the State does not contest that a material Brady claim that was not disclosed at the time of the first petition would not have been treated as an abuse of the writ. And so the question then becomes, well, is there a reason that AEDPA would foreclose that claim that would have survived under the abuse of the writ doctrine? And the answer in the case of Brady is clearly no. You look to AEDPA's purposes. Counsel earlier mentioned finality. But in granting the Habeas Court's jurisdiction, Congress had no intent to accord finality to convictions that were obtained while the State was withholding evidence. Lopez addresses this, and it says that certainly, the language Lopez uses, that it's certainly not an AEDPA goal. AEDPA could not have intended to foreclose those claims. A number of other circuits have addressed this, right? And they've all come down on the plain language side? There are, there is only one circuit that has addressed this since Panetti, that is the Eleventh Circuit in Tompkins v. Secretary. All of the others, in all of the other claims that our opposing counsel cited, the issue of whether a Brady claim is properly treated as second or successive was never decided. There's the Fourth Circuit decision in Evans. That was pre-Panetti, and its language does not survive Panetti. The rationale was based on the idea that a claim is not second or successive only if a first petition is in some sense still pending. So Tompkins v. Secretary is really the only other case that is, that would be, that would be consistent with our position. And the Eleventh Circuit in Tompkins, there were several claims presented, including a Brady claim, and the Court's rationale was simply, well, these are claims that could be and routinely are raised in first petitions. Therefore, they were ripe at the time of a first petition and should be treated as second or successive. The Court did not stop to ask whether a Brady claim can, in fact, be brought at the time of a first petition. And certainly when the fact of the violation has not been brought at any earlier time. Let me ask you this. Your posture seems to be a little bit different than the other two in the sense that if, but I'm not saying, we haven't conferenced on this case, so we don't have, I'm just giving you a hypothetical at this point. But if we were to reject your argument that Prince's habeas petition is not second or successive, I don't see anywhere in your brief where you're seeking permission for this Court to file a second or successive. We do not ask that because we are on appeal of a dismissal for lack of jurisdiction on the question whether this claim is second or successive. So that was the focus of our brief, was arguing that our claim should not be treated as second or successive. Okay. So you're not, you didn't, you're not seeking that as a fallback position? Not as an alternative in this briefing. If this Court were to disagree with us, that our claim is not second or successive, we would consult with our client. See you next time. And we would, we would, our client may wish for us to file an application for permission. Okay. I just wanted to make sure that I understood the posture that you were putting it. Yes. What is the precedential value, what precedential value does our decision in Lopez have in light of our later decision in Gage? Well, I would emphasize that since Gage, a three-judge panel of this Court in Benjamin v. Gibson has indicated that the Lopez, the question left open in Lopez is still an open question. So that Court did not view Gage as preclusive. And I wanted to highlight a couple of points about Gage that have been touched on earlier. Gage did say, there was a suggestion that Gage did not say that a Brady claim became ripe when the trial judge commented on the contents of the disclosed evidence at a post-trial hearing. That is exactly what Gage said. That said that it became ripe at the latest at that time. But it didn't say it becomes ripe when you discover it. It said, so it drew a very clear distinction between an ineffective assistance of counsel claim raised in Gage and the Brady claim raised in Gage. In both instances, the ineffective assistance of counsel claim, the petitioner knew about it after trial. He was on notice after trial. But the Gage Court said that claim became ripe at trial. So it became ripe even before there was a reason to know of the specific evidence. That's an ineffective assistance of counsel claim. The factual predicate occurred at trial and therefore became ripe at that time. With respect to the Brady claim, on the other hand, the Court said that that claim became ripe when the contents were discussed. In other words, when the at the latest language, I think the best reading of that language is what the Court was saying is it's possible that the petitioner in Gage had notice of it earlier. So it could have become ripe earlier because the petitioner in that case knew that there were records that were being withheld. He just didn't know all of the details of it until after. So it could have been that the petitioner was on notice of it earlier. But I think the clear implication of Gage is that its claim does not become ripe until the petitioner has notice of the contents at whatever point that that occurred in Gage. I wanted to just finally address the question of the suspension of the writ and whether or not it's a concern to cut off constitutional claims because that does seem to cut off some claims. So Panetti and Villareal's concern was not cutting off simply forward claims. The concern expressed there was cutting off a petitioner's only opportunity at raising a constitutional claim. And that is what would occur here if this Court were to adopt the State's view. So how do you square that with Felker v. Turpin where the Court did uphold 2244b? So in Felker, the claim there was clearly an abuse of the writ. The Court even said that the petitioner had not shown cause and prejudice. So there's no suspension clause concern. The petitioner had not lost his only opportunity to present that claim. He could have presented that claim in his first petition and neglected to do so. Would you like to preserve the balance of your time? I would, Your Honor. Thank you. Thank you. Good morning. Good morning. May it please the Court. Charles Lee for the Warden. The Supreme Court said in Magwood that the starting point in determining what is or isn't second or successive has to be the statute itself. You can't read a statute in a way that would render parts of 2244 superfluous. And here, 2244b2b makes it clear that there's a mechanism in place for dealing with newly discovered claims. And as the Court held — I don't understand your superfluous argument. There's things that 2244b apply to other than Brady. So what's the superfluous? Right. What are we rendering superfluous? Well, 2244b2b applies to newly discovered claims in general. Yeah. And this Court held in Buen Rostro that the difference between newly discovered claims and Panetti-type claims, claims in which the factual predicate does not exist, is that for newly discovered claims, claims that apply under 2244b2b, the factual predicate was already in existence at the time of the trial, or at least at the time of the first petition. And Panetti, on the other hand, the factual predicate did not exist. And this causes a twofold problem. First, petitioners in Panetti with ripe Ford claims, or ripe claims in general, would never have their claims heard because those claims become ripe after the trial or after the first petition. And Your Honor mentioned safety valve earlier. In Panetti, a person with a Ford claim would not be able to take advantage of a safety valve because Ford claims don't pertain to actual innocence. So that leads to the second problem, which is that someone with a Ford claim or everybody with a Ford claim would have to raise their claims in the first petition, regardless of whether or not they're incompetent, just in case they become incompetent later. Well, this contradicts the purpose of AEDFA because it does nothing to reduce judicial efficiency or increase judicial efficiency. It doesn't reduce piecemeal filings or frivolous filings. And it doesn't help finality because Ford claims can't be decided until 10 or 20 or 30 years later, anyways. So these are the specific types of problems that Panetti is concerned with. Kennedy. You say that if factual predicate existed, regardless of whether it was known. Right. But where there's an active suppression of the evidence by the government in a Brady claim, how can you charge the petitioner with the duty of due diligence to discover it? He can be as diligent as possible, but if it's consciously suppressed, how can he discover it? I agree that if it's consciously suppressed, then the petitioner would not be able to discover it. But I think this is something that Congress specifically contemplated. So you agree that where there's conscious suppression of Brady evidence, then it's not a second and successive until the Brady evidence is unearthed? Oh, no. I'm sorry, Your Honor. If it's a conscious suppression of evidence, then it would still be second and successive because the evidence existed. It existed in a drawer that the government kept locked. Right. But it existed, but it had not been disclosed. And it's the disclosure, the discovery that is the distinction. How was he supposed to have brought the claim in his first petition if the government hadn't had it in a locked drawer? Oh, how is the petitioner supposed to raise the claim? Yes. He would be unable to. And he would be able to make a showing under 2244B2B that the evidence was newly discovered and he could not have discovered it with due diligence. Because, Your Honor, this type of situation isn't exclusive to Brady claims. Gwen Rostrow, I think, is a good example. You know, in that case, it's an ineffective assistance of counsel claim, but counsel rejected a plea agreement without telling the petitioner. The petitioner had no way to find out that counsel rejected the plea agreement until after the trial and after the first petition. So under that circumstance, you know, Your Honor, this is a type of thing. Is counsel being ineffective and the government suppressing evidence? There may be a difference as a policy matter, I think, but not under 2244. Because from the petitioner's perspective, if there's — if a counsel has a conflict of interest or is trying to hide evidence of his own incompetence, then he has no way of accessing that information anyways. But that's not government action, is it? It's not, Your Honor. No. But from the perspective of 2244, there's no difference between government action or counsel's action or actions by an unscrupulous trial judge. I think there's other mechanisms in place for dealing with unscrupulous actions by prosecutors, but 2244 is not the mechanism to do that. And with regard to Gage, Gage says specifically that it relies on the teaching of Buen Rostro. And it says, as a three-court panel, we are bound to the teachings of Buen Rostro. And it summarizes the Buen Rostro reasoning in detail. And the Buen Rostro reasoning is clear. It draws a clear line between claims in which the factual predicate did exist at the time of the first petition and claims in which it did not, and claims that the petitioner could not have discovered, whether it was suppressed by counsel or by the prosecution or if it was just undiscoverable in any other way, those claims fall under 2244b2b. I would also point out that even though Congress does not specifically mention Brady claims when it enacted 2244b2b, the fact that it doesn't mention Brady claims is also compelling, because 2244b is a broad rule that applies to newly discovered claims. And if Congress intended to exclude Brady claims from that rule, I think it would have specifically mentioned it. And it's also important to note that Brady claims were not treated differently from other claims even prior to AEDPA. Now, it's true that Brady claims that were material passed the cause and prejudice standard of AEDPA doctrine, but they passed because the suppression and materiality elements of Brady matched up with the cause and prejudice elements of the abuse of writ doctrine. So the courts were still applying the analysis of cause and prejudice. It's just that they found the claims or the elements matched up. And if I can go back to Pennedy for a little bit, the example of Brady claims and the examples in which Pennedy exceptions have been found all show that there was some sort of triggering event after the first petition that gave rise to a new set of facts. So when Roaster pointed out two examples. First, the denial of parole. A petitioner can't challenge the denial of parole at the time of the first petition because obviously it hasn't happened yet. And the same thing with the suspension or the suspension of the, sorry, the imposing of a suspended sentence. So these are all new fractional predicates that arise out of this triggering event. Brady is not one of those events. Brady violation occurred at the time of trial. The question is when it was discovered. And that's the question for 2244B2B. We don't have any additional questions, I don't believe. That's the case. I'll ask your honors to dismiss the petition. Thank you. Thank you. And I'd like to make two points. My opposing counsel mentioned that all of the factors in Pennedy, and I wanted to emphasize it's not just finality that wouldn't be served by treating a Brady claim as second or successive. It's all of the factors mentioned in Pennedy. It's not simply that Edpis comedy goals wouldn't be served by foreclosing a claim that the state could have prevented from being litigated later had it just met its constitutional disclosure obligations. It's also true that it wouldn't conserve judicial resources because it's more likely to prolong and divide federal habeas proceedings if the state has an incentive to withhold evidence until after a first habeas proceeding, therefore necessitating a second habeas proceeding. As to my second point, Judge Beyer, you mentioned due diligence and whether or not this is the kind of claim that a petitioner could have discovered on his own. That's precisely right, and the Supreme Court made that point in Strickler v. Green when it noted that in the case of a Brady claim, it doesn't make sense to be talking about due diligence. So in some ways, the statute doesn't map on to Brady claims, a statute that talks about due diligence, because as the Supreme Court said in Strickler, a petitioner can never conduct a reasonable and diligent investigation when the evidence is in the hands of the state. When the Supreme Court made a distinction between Brady evidence and other evidence in another case, the United States v. Augers, that was a case where it applied a lower standard for a motion for new trial based on evidence that was withheld by the state rather than had been discovered from a neutral third party. And what the Court said there was, quote, evidence that was available to the prosecutor but not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. If the standards were the same, there would be no special significance to the prosecutor's obligation to serve the cause of justice. And if the state's rule were adopted here, it would similarly accord no special significance and would undermine the fundamental duty of the state to disclose material and exculpatory evidence. If there are no further questions, thank you, Your Honor. Thank you both for your argument. This matter will stand submitted. The Court's going to take a brief recess for 5 to 10 minutes, and then we'll reconstitute on the last case.
judges: Callahan, Bea, Restani